## Case No. 7,537.

### The JOSEPH GORHAM.

[2 N. Y. Leg. Obs. 388; 7 Law Rep. 135.]

District Court, D. Connecticut. Oct. 28, 1843.

Before JUDSON, District Judge.

THE COURT, upon full consideration of the evidence, doth find, as matters of fact, that Stillwell, the deputy marshall of the Southern district of New York, on the 4th day of August, 1843, by virtue of a warrant issuing out of the district court of the United States for the Southern district of New York, did seize and attach the brig Joseph Gorham, and took possession of her in the harbor of New York; that Elisha Seely and Albert Seely knew the fact of this attachment by the marshall, and that on the 7th day of August, 1843, Albert Seely and Elisha combined unlawfully, and in violation of the said process of the said district court of the United States for the Southern district of New York, collusively and fraudulently and forcibly did carry said brig out of the Southern district of New York, and with the view to have her attached for the debts of Elisha, they did bring the brig into the district of Connecticut, and on the 8th day of August, 1843, did carry out this fraudulent combination, by having the brig attached, as is stated in the answer of the respondents on file, and now claim to hold her against the deputy marshall.

Having found these facts, THE COURT will proceed to consider the application of

the law to them. In doing which, the answer of the respondents will be taken up, and the several objections duly considered and determined, as we proceed in the case, taking up these objections in a more natural order than that in which they stand in the answer.

The 5th objection may be first considered. The respondents, in their answer, deny that the brig was ever attached by Stillwell. If right here, there is no necessity of proceeding any farther with the case. The whole proceedings rest on the fact that the brig was attached and seized by Stillwell's warrant on the 4th of August. Take away this foundation, and there is nothing left but to end the process commenced here. But this denial is against the evidence. The proof is conclusive that Stillwell served his warrant on the 4th of August. This objection also embraces another proposition,—that, if attached by Stillwell, he had abandoned the attachment; thus loosing his lien on the brig, and leaving her free to be attached by Seely's creditors in Connecticut. Or, in other words, that as the deputy marshall, after the seizure, entrusted the brig to Capt. Williams, who had ever commanded the vessel, he thereby lost his lien, and the attaching creditors in Connecticut had right to interpose their claim. The facts in this part of the case are quite simple. Capt. Williams owned half the brig, Elisha Seely one-fourth, and Joseph Gorham the other quarter. The latter gave to Elisha Seely a power to act for him, so that Williams owned half, and Seely owned and represented the other half. The vessel arrived on the 29th of July. Elisha Seely residing in Darien, went to New York on the 1st of August. On the 4th of August a libel was filed by Benner. The warrant is served and the attachment is made the same day. Capt. Williams was on board when the attachment was served, and the marshall left the vessel in his keeping. This was made known to E. Seely on the 5th of August. Immediately thereafter, E. Seely went to the New York custom house and represented himself as master, got a clearance for the brig, which was privately done. And on the 7th of August, while the marshall's ship keeper was on shore, Capt. Seely and Albert Seely took the brig away, and, as soon as she was cleared from her fastenings and made fast to a steamboat, Albert Seely proceeded to Darien, where he procured the attachments, and, with the constable to serve them, came out in a small boat, where Capt. Elisha Seely was lying to in waiting. They went on board about six miles from Darien, and were then taken into port by Capt. Seely, the defendant in all these cases; his own property being thus attached. To say the least, this was a very extraordinary proceeding, and to the mind of the court fully confirms the statement made by some of the witnesses that the two Seelys knew that the brig had been attached.

These facts do not present any such case as the law will declare to be an abandonment of the rights under the attachment of the marshall. There is no new credit obtained by the marshall leaving the brig in the possession and keeping of Capt. Williams. The Seelys do not procure process and incur expense in securing a debt upon property which they believed to be free, but they knew it to be incumbered with the prior attachment, and they seek to avoid that prior incumbrance by running the brig into another jurisdiction, where they suppose that process cannot come. Sufficient for this part of the objection is it that the two Seelys had knowledge of Stillwell's attachment, and collusively attempted to throw it off by their own unlawful conspiracy and combination.

The 6th objection very naturally follows the one last considered. The substance of this objection is that George A. Bowler is a constable of Darien, and as such has attached the brig in the state of Connecticut, by virtue of state process, and this cannot be interfered with by any proceeding or process of the United States. This proposition might be well founded, and would indeed be, if this were a lawful attachment. No court of the United States ever interferes with any state liens or state process. But in the present case there has been no attachment of this brig by any state process which can ever be recognized by any tribunal, either state or national. A single moment's attention to the case will make this clear to every one. The brig, while in the harbor of New York, is seized by the marshall, under a warrant from the United States court, and while under that seizure two men who know the fact contrived a secret plan to run away with the brig. They combine for the fraudulent purpose of interrupting the regular administration of justice in the United States court, and in violation of the known laws of the United States they seize the brig, and hasten her out of that jurisdiction into Connecticut. What was this act? A trespass, and these men who bring away the brig are trespassers, and violators of the Penal Code of congress. What do they do when they arrive here? We answer, they fraudulently procure writs and attach the brig. These trespassers do this. They use the forms of law as mere instruments to continue their own illegal acts—to perfect their own trespass. Can such proceedings be tolerated? Surely not. A good title to property cannot be engrafted upon wrong doings—upon a high-handed trespass. Every man who has intermeddled with this brig in aid of the fraudulent combination of the two Seelys is also a trespasser. It may well be said, then, that here is no interference of collision with state authority. The interference is on the other side. The Seelys are the aggressors, but the state never lends its authority to a trespasser—a wrong doer. It cannot do it. The right of the possession of this brig from

the 4th day of August has been in the deputy marshall, and he might have followed her any where and retaken her, resting his claim on that right.

It follows, then, that each and all the writs enumerated in the answer of these respondents, as to this brig, were utterly void. They were procured and used in fraud of the law. They constitute no obstacle to the possession of the marshall of the district where the brig was first attached.

The fourth objection contained in the answer of the respondents is that the original libel in New York is not within the jurisdiction of the district court of the United States for the Southern district of New York. That court has no jurisdiction. All that need be said to this part of the answer is that this is not the place to try that question. The present proceedings are founded upon a process issued by a court of competent jurisdiction in admiralty. That was a suit in admiralty, and the place to settle the truth or legality of that libel is in the court from whence it issued. This objection cannot avail.

The third objection is that this should be a libel, and have accompanying it a monition or citation. This objection is founded in a mistaken idea of the nature and form of a libel in admiralty. There is no form prescribed by law. The party may adopt his own form, and use his own language, provided he make his complaint or claim intelligible to the court. But to all intents this is a libel. The suffering party sets forth his complaint, and prays the court to issue process of restoration. But there is superadded to this objection that a monition or citation should have accompanied the libel or complaint. In this case the marshall takes his warrant, and having secured the property, so that it may be well considered as in the custody of the court, all parties come into court, and the respondents make answer and shew cause; they produce all their evidence, interpose their arguments, and are fully heard before any removal of the property, before it is restored, or even in fact taken out of their possession. Nominally it is seized, but actually remains and awaits the full hearing ordered by the court. What is the object of a citation? To give notice to the opposite party that he may appear and contest the claim set up against him. What has been done in this case? We answer, the respondents come in voluntarily, make their answer in writing, thereby waving all previous objections of form as to notice, when and where the questions between them are amply defended and tried. This is deemed sufficient.

The first and second objections may be considered as one, and answered as one. The substance of these two objections seems to be that in a case like the present the district court of the United States possess no power to hold cognizance of the matter in question. Involved in these two objections there is a matter of form also, which may be stated in this manner: If addressed to the judge by name, there is a want of authority to act. If addressed to the district court, there is no power in the court to grant the relief prayed for. This part of the objection may be disposed of by stating that it is immaterial whether a libel be addressed to the judge by name, superadding his office, or whether it be addressed to the district court. Either will be sufficient, and one may be as proper as the other. The substantial part of this objection embraces a very important question, and should be gravely considered. What, then, is this important question? The United States district court of Connecticut has issued a process in the exercise of its admiralty jurisdiction in aid of the powers and jurisdiction of a court possessing similar powers, in an adjoining district, where the property, being in its nature within the admiralty powers of the court, has been once lawfully seized and taken into its jurisdiction; and while there to be adjudicated hath been fraudulently and clandestinely withdrawn from that jurisdiction and brought here. The court having began the case originally was the district court of the United States within the Southern district of New York, and while proceeding to adjudicate upon that property it is arrested from that court, and brought into the district of Connecticut, by trespassers and wrong-doers; and, having possessed themselves of the property in the manner stated, they now come here and interpose their objections to its restoration! All that this court has been called upon to do is, through its admiralty powers, to restore this property to the marshall of New York, so that it may be there proceeded with according to law. If this court possesses no such power, where is the remedy? Upon the facts found, no man can hesitate for one moment that there should be a remedy for a case so flagrant, and where is it? It is not in the district court of New York, because the marshall of that district possesses no authority here. Is it in a state court? No one will pretend that. The remedy, then, is in the admiralty in that district where the vessel may be found, and its duty is obvious. The vessel should be restored. It is the opinion of this court that this case falls directly within its admiralty jurisdiction.

The facts and circumstances of the case warrant the court in coming to the result that the warrant issued on the 5th day of September, 1843, in the matter of the brig Joseph Gorham, after full hearing, be no longer suspended, but the same be executed, and that the said brig Joseph Gorham, now in custody of the marshall of the United States for the district of Connecticut, be forthwith restored, with its tackle, apparel, and furniture, unto the said Wm. S. Stillwell, a deputy marshall of the said Southern

district of New York, to be there proceeded with as to law and justice shall appertain. The decree will be so entered.